IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JON BREWER, NATHAN COHEN,
QUENTIN DOYLE, TIMOTHY TARANTINO,
KRISTEN TAYLOR LOONEY, BRADLEY
WHITWORTH, LUCAS WILSON, DESMOND
LOONEY, MICHAEL THOMPSON, JACOB
MOORE, SHANE HINTON, JARED HINTON,
KELVIN TIGNER, JOHN WILSON, STUART
SPAHN, CHRISTIAN LAGARDE, and SHAWN
SELL on behalf of themselves and others
similarly situated,                                    Case No. 2:11-cv-00401

        Plaintiffs,                         Magistrate Judge
                                                       Joseph C. Wilkinson, Jr.

vs.

BP p.l.c., BP AMERICA PRODUCTION
COMPANY, BP EXPLORATION &
PRODUCTION INC., TRG THE RESPONSE
GROUP, L.L.C., and ROY BARRETT,

        Defendants.

_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF COURT
APPROVAL OF ATTORNEYS' FEES AND COSTS PURSUANT TO
THE PARTIES' PROPOSED STIPULATION OF SETTLEMENT**

Plaintiffs hereby file this memorandum of law in support of Court approval of the

amounts allocated to Plaintiffs' attorneys' fees and costs pursuant to the Parties' Stipulation of

Settlement, submitted to the Court *in camera* on the same date this memorandum of law is filed

with the Court.   Under the Fair Labor Standards Act ("FLSA"), courts "shall, in addition to any

judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

defendant, and costs of the action."   29 U.S.C. § 216(b).   Plaintiffs' Counsel seek attorneys'

fees that are less than their combined lodestar fee and equal to 33 and 1/3 percent (33 1/3%) of

the total settlement amount or 23 percent of the total recovery of the Plaintiffs,[1] plus a specified, and relatively modest amount in expenses and costs.   *See* Declaration of Sam J. Smith ("Smith Dec.") submitted to the Court in accompaniment of the Stipulation of Settlement for *in camera* review, ¶¶ 18, 23.   Defendants do not oppose or object to Plaintiffs' Counsel's requested fees and costs.   *Id.* at ¶ 18.   Further, under the terms of the Parties' Stipulation of Settlement submitted to the Court contemporaneously herewith, the 17 Plaintiffs and 198 Opt-In Plaintiffs in this case (hereinafter "Plaintiffs") will receive full compensation (i.e. the full amount to which they would likely recover in in back wages and liquidated damages if they prevailed on their claims at trial) for their overtime wage claims.   *See* Smith Dec., ¶ 21(g).   Plaintiffs' attorneys' fees and costs warrant Court approval for the following reasons:

## I.   A LODESTAR ANALYSIS WITH PERCENTAGE CROSS-CHECK CONFIRMS THAT THE FEES REQUESTED ARE MORE THAN REASONABLE

In *Altier v. Worley Catastrophe Response, LLC et al.*, 2012 U.S. Dist. LEXIS 6391 (E.D. La. Jan. 18, 2012) (Wilkinson, M.J.) (hereinafter "*Worley*"), an FLSA collective action very similar to this one in which the proposed settlement and request for fees were recently approved by this Court, this Court examined the reasonableness of plaintiffs' counsel's requested attorney's fees under the Fifth Circuit's "preferred lodestar method," and then performed a cross-check comparison under the percentage method.   *Worley*, 2012 U.S. Dist. LEXIS 6391 at *64-65.   In doing so, this Court noted that "the Fifth Circuit has traditionally used the lodestar

---

[1]  The percent in fees which Class Counsel seek is actually only 23% of the Plaintiffs' total recovery because TRG paid Plaintiffs overtime payments in February, 2011 when it became aware of Class Counsel's investigation of the company's misclassification of the oil spill workers.   The February 2011 payments made to Plaintiffs can certainly be considered a part of the recovery Class Counsel was able to obtain for Plaintiffs since the payments were made as a result of TRG being put on notice that Class Counsel was investigating claims of misclassification and failure to pay overtime against it, and Class Counsel was also able to secure those payments to Plaintiffs as a term of the Stipulation of Settlement (*see* 2.1.11) whereby Plaintiffs who had not obtained or cashed the February 2011 check would be permitted to cash same, or a new check would be issued by TRG in the event it was never received, or the Plaintiff no longer had it or could no longer negotiate it.   *See* Smith Dec., ¶ 21(k) n. 7.

method to calculate reasonable attorney's fees in all types of cases," although it also "appears to tolerate the percentage method, so long as the Johnson framework is utilized to ensure that the fee awarded is reasonable."   *Id.* at *63 citing *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 651 (E.D. La. 2010) (Fallon, J.).

> **A.**   **The Lodestar in this Case Actually Exceeds the Amount which Plaintiffs' Counsel Seek in Fees.**

The lodestar method "entails multiplying the reasonable hours expended on the litigation by an adjusted reasonable hourly rate."   *Id.* at *62 citing *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d at 651.   This calculation produces the lodestar which is deemed to be "presumptively reasonable and should be modified only in exceptional cases."   *Id.* at *65, *71 citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *see also Heidtman v. County of El Paso*, 171 F.3d. 1038, 1044 (5th Cir. 1999) (noting "the strong presumption that the lodestar award is the reasonable fee").   The lodestar can then be adjusted upward or downward by the Court based on the Court's consideration of the *Johnson* factors, which are listed and analyzed later on below. *Id.*; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).   As demonstrated below, no downward adjustment would apply to the lodestar here; in fact, an analysis of the *Johnson* factors demonstrates that Class Counsel[2] would be entitled to an upward adjustment if they were seeking one.   Using such a straight lodestar calculation with no multiplier, Class Counsel's fees actually exceed the 33 and 1/3 percent of the total settlement which Class Counsel seek.

> **1.**   **Reasonable hours expended.**

Class Counsel commenced work on this matter in November, 2010.   *See* Swartz Dec., ¶

---

[2] While Plaintiffs acknowledge the technical term is "collective action" under the FLSA, for ease of reference the term "class" is often used, as many courts (including the U.S. District Court for the Eastern District of Louisiana) have recognized. *See Camp v. Progressive*, 2004 WL 2149079 (E.D. La. 2004) (Wilkinson, Mag. J.); *Donohue v. Francis Servs.*, 2004 WL 1161366 (E.D. La. 2004) (Barbier, J.).

4.   In representing the 215 Plaintiffs in this conditionally-certified FLSA collective action, Class Counsel worked more than 4,548.14 hours as of April 10, 2012.   *See* Smith Dec., ¶ 21 (a), and Exhibits B and D attached thereto.   To arrive at this total hours amount, Class Counsel exercised billing judgment and excluded all hours deemed to be unproductive, excessive, or redundant. *Worley*, 2012 U.S. Dist. LEXIS 6391 at *70 citing *Green v. Admin'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002); Smith Dec., ¶ 17, and Exhibits B and D thereto; the Declaration of Justin Swartz ("Swartz Dec."), ¶¶ 18, 21, 26; the Declaration of Bruce Kingsdorf ("Kingsdorf Dec."), ¶ 13; and the Declaration of Rex Burch ("Burch Dec."), ¶ 10[3] (these declarations are submitted to the Court for *in camera* review contemporaneously herewith).   Contemporaneous time records have also been provided by Class Counsel to the Court for *in camera* review in support of their reasonable hours worked and fees requested in this case.

The litigation in this case, as reflected in Class Counsel's contemporaneous time records, included conducting extensive pre-suit interviews of witnesses and significant legal research to evaluate the merits of the claims; contending with several pre-trial orders routing the case to the Deepwater Horizon MDL 2179 and effectively staying the case until oral argument was heard by the Court and the Court entered an order severing the instant case from the MDL; highly contentious litigation early on related to a copy-cat lawsuit[4] brought in Texas which required Plaintiffs' to move to intervene and transfer[5] pursuant to the "first-to-file" rule, and oppose a stipulation between the Texas plaintiff (Lisotta) and Defendants TRG and Barrett to conditional certification and notice in the Texas case despite a pending conditional certification and notice

---

[3]  After exercising billing judgment, Rex Burch did not have any excessive, redundant or unnecessary hours to cut from the 13.6 hours he billed in the case.
[4]  *Lisotta v. TRG The Response Group, LLC et al.*, Civil Action No. 4:11-cv-00627 (Filed in S.D. Tex. Feb. 22, 2011).
[5]  *See Brewer* Plaintiffs' Motion for Intervention and Transfer, Memorandum of Law, and Exhibits (Dkt. 20) in *Lisotta v. TRG et al.*   Plaintiffs were ultimately successful in causing the collective action claims in *Lisotta* to be transferred to this Court and consolidated with the instant case.   *See Lisotta* Order from the S.D. Tex. Transferring the collective action claims (Dkt. 26).

motion by the instant first-filed case before this Court;[6] a motion to dismiss brought by the BP

Defendants in response to which Plaintiffs drafted a response in opposition and filed an

Amended Complaint with additional joint employer allegations; Plaintiffs' motion for

conditional certification and court-authorized notice, supported by 21 declarations from Plaintiffs

and putative plaintiffs, and on which oral argument was heard before this Court (J. Barbier); 215

Plaintiffs, most of whom were interviewed and many of whom provided signed declarations filed

with the Court or in support of briefs submitted in the Early Neutral Evaluation process; ongoing

retaliation requiring Plaintiffs to amend their First Amended Complaint to add 15 Named

Plaintiffs with individual retaliation claims and 18 additional counts of retaliation; Initial

Disclosures involving the production of numerous documents; an Early Neutral Evaluation

process consisting of voluminous paper discovery[7] and summary judgment-like motions,

briefing, and responses; and a lengthy mediation, all of which caused Plaintiffs' counsel to

expend a significant amount of hours conferring; strategizing; conducting legal research; drafting

pleadings, motions, responses, memoranda of law, declarations, and a thorough mediation

statement; processing documents into useable data; conducting data analysis and constructing

damage calculation spreadsheets; counseling, advising, and interviewing Plaintiffs; reviewing,

analyzing and coding documents; and preparing for mediation.   *See* Smith Dec., ¶ 20.

     Given the complexity and nature of this litigation, Class Counsel's hours are more than

reasonable, and are in fact 903.86 hours less than the number of hours this Court deemed to be

---

[6] *See* Stipulation (Dkt. 21) and *Brewer* Plaintiffs' Notice of Opposition and Request to Be Heard on the Alleged "Stipulation" filed on May 2, 2011 (Dkt. 22) in *Lisotta v. TRG et al.*   Defendants TRG and Barrett initially opposed the *Lisotta* motion for conditional certification and notice, however, after Plaintiffs in the instant case moved to intervene and transfer, Defendants TRG and Barrett agreed to stipulate to conditional certification and notice in the Texas case, nine days before Plaintiffs' motion for conditional certification and notice was scheduled to be heard before this Court in *Brewer*.   *See Lisotta* Court's Order Transferring the case, Dkt. 26 of *Lisotta v. TRG et al.*

[7] In response to Plaintiffs and Defendants' requests for production, over 60,000 documents were produced in the Early Neutral Evaluation process between Plaintiffs and Defendants, for which Counsel for Plaintiffs reviewed and coded approximately 20,000 documents submitted by Plaintiffs and witnesses.

reasonable in *Worley*, an FLSA collective action very similar to this one.[8]   Smith Dec., ¶ 21(a). Importantly, the number of hours provided to the Court does not include hours expended past April 10, 2012, including preparing this memorandum of law in support of approval of Class Counsel fees and supporting declarations, finalizing the proposed settlement agreement and related motions, and conferring with opposing counsel regarding same, nor does it reflect the number of hours which will be expended by Plaintiffs' Counsel in obtaining an appropriate claims administrator, coordinating with the claims administrator, confirming contact information from and further advising Plaintiffs regarding the settlement distribution, facilitating the distribution of settlement funds to the 215 Plaintiffs, and other such tasks associated with the administration of the claims in this case.   Smith Dec., ¶ 18.

**2.     Reasonable hourly rates charged.**

A court determines the reasonable hourly rate by looking at the "prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community."   *Prater v. Commerce Equities Mgmt Co.*, 2008 WL 5140045, *3 (S.D. Tex. 2008); *see also McCain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011).[9]   Furthermore, when an attorney requests the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested, the attorney's requested hourly rate is prima facie reasonable.   *Worley*, 2021 U.S. Dist. LEXIS 6391 at *68 *citing La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).   Defendants do not contest Class Counsel's hourly rates.   Smith Dec., ¶ 16.

In addition, although the attorneys representing Plaintiffs in this case are located in or

---

[8]  In *Worley*, this Court found the 5,452 hours worked by class counsel to be "reasonable and even on the low side." *Worley*, 2012 U.S. Dist. LEXIS 6391 at *70-71.
[9]  Class Counsel's individual billing rates, years of practice, experience and qualifications are outlined in Class Counsel's declarations.   *See* Smith Dec., ¶¶ 1, 2, 4-6, 8, 10, 16; Kingsdorf Dec., ¶¶ 1, 3-5, 7, 12; Swartz Dec., ¶¶ 1, 10-17; Burch Dec., ¶¶ 2-7, 9.

practice in markets with hourly rates which are higher than the hourly rates typical for attorneys in the Eastern District of Louisiana, and have customary hourly rates which they have collected for their work in the past which are higher than those typical in this market, Plaintiffs' attorneys have all reduced their customary hourly rates for this case to rates consistent with those of attorneys of similar experience and qualifications in the New Orleans, Louisiana area.  *See* Smith Dec., ¶ 5; Swartz Dec., ¶ 25; Kingsdorf Dec., ¶¶ 4, 12; and Burch Dec., ¶ 9.

In determining the appropriate rate reductions, lead counsel Sam J. Smith consulted with local counsel at the New Orleans-based firm, Barrios, Kingsdorf & Casteix; reviewed the published opinion by this Court in *Altier v. Worley Catastrophe Response, LLC*, 2012 U.S. Dist. LEXIS 6391, *67-69 (E.D. La. Jan. 18, 2012)(Wilkinson, M. J.) in which this Court found $400 to be "entirely reasonable" in a case extremely similar to the one at hand for a partner-level attorney who had practiced law for 19 years; and reviewed the 2010 survey of attorneys' hourly rates[10] (including firms located in New Orleans) published annually by The National Law Journal ("NLJ"), a true and correct copy of which is attached hereto as Exhibit 1.  *See* Smith Dec., ¶ 5.   According to the NLJ survey, Adams & Reese in New Orleans, Louisiana has a high partner rate of $550 and a low partner rate of $250 with the average rate being $344; Jones, Walker, Waechter in New Orleans, Louisiana has a high partner rate of $620 and a low partner rate of $195; and Phelps Dunbar in New Orleans, Louisiana has a high partner rate of $385 and a low partner rate of $180, with the average rate being $272.   Exhibit 1.   The average high partner rate (rates for those partners with more experience and qualifications) is approximately $518, well above the hourly rates which the most experienced and qualified partners in this case are requesting (*see* Exhibit 1; Decs. from Class Counsel, ¶¶s cited in fn. 8).

---

[10]  The National Law Journal Attorneys' Fees Survey 2010, http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202475563622.

**3.** **An analysis of the *Johnson* factors demonstrates that no reduction of the lodestar would be appropriate, rather, an enhancement would be warranted if Class Counsel were seeking one.**

Although Class Counsel are not seeking an upward adjustment of their lodestar since their lodestar already exceeds the 33 and 1/3 percent of the total settlement Class Counsel seeks in fees, an analysis of the *Johnson* factors demonstrates only an enhancement, and not a reduction, of the lodestar would be appropriate.   The twelve *Johnson* factors for adjusting the lodestar using a multiplier are: **(1)** the time and labor required for the litigation; **(2)** the novelty and difficulty of the questions presented; **(3)** the skill requisite to perform the legal services properly; **(4)** the preclusion of other employment by the attorney by acceptance of the case; **(5)** the customary fee; **(6)** whether the fee is fixed or contingent; **(7)** time limitations imposed by the client or circumstances; **(8)** the amount involved and the result obtained; **(9)** the experience, reputation, and ability of the attorneys; **(10)** the "undesirability" of the case; **(11)** the nature and length of the professional relationship with the client; and **(12)** awards in similar cases.   *Worley* at \*65-66 *citing Alexander v. City of Jackson*, No. 11-60254, 2011 U.S. App. LEXIS 26039, 2011 WL 6847792, at \*1-2 (5th Cir. Dec. 30, 2011) (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.3d at 324).

**a.** **The first factor: the time and labor required for the litigation**.

This was complex litigation which involved collective claims of 215 opt-in Plaintiffs for misclassification and violations of the overtime provision of the FLSA against five Defendants as joint employers, as well as 18 counts for individual and collective retaliation claims against two of the Defendants.   *See* Smith Dec., ¶ 1; *see id.* at ¶¶ 18-21(a)   for a summary of the time and labor required in this litigation.   It also involved a copy-cat case filed in Texas which required Plaintiffs to move to intervene and transfer, and oppose conditional certification and notice which Defendants TRG and Barrett stipulated to after Plaintiffs had moved to intervene.

*Id.* at ¶ 20.   In addition to filing a lengthy Complaint to adequately represent the issues and allegations involved in this case, Plaintiffs were required to twice amend their now 68-page, 19-count Complaint in response to BP's motion to dismiss and to continuing retaliation against Plaintiffs.   *Id.*   Further, Plaintiffs filed a 216(b) motion and memorandum of law supported by 21 declarations from Plaintiffs, and facilitated Court-authorized notice to be issued to 699 putative plaintiffs.   *Id.* at ¶¶ 19-20.   The litigation also entailed voluminous paper discovery (over 8,000 pages of documents produced by Plaintiffs and over 53,000 produced by Defendants) and an intensive ENE process which required extensive research and summary judgment briefing and responses on highly-contested issues, many of which were issues of first impression, as well as the preparation of supporting declarations and identification and analysis of supporting documents.   *Id.* at ¶¶ 20, 21 (b), 21 (f).   Additionally, the litigation required extensive mediation briefing, damage calculations, and settlement negotiations.   *Id.* at ¶¶ 20, 21(f), 26.   The docket in this case includes over 300 entries, and this does not reflect the voluminous briefing and activity in the confidential ENE process.   Smith Dec. ¶ 25.   Hence, the complex nature of this case and vigorous defenses by five Defendants required an amount of time and labor which would support an enhancement of the lodestar, not a reduction.

> **b.** **The second factor: the novelty and difficulty of the questions presented.**

This factor also supports an upward adjustment of Class Counsel's fee request, if Plaintiffs' Counsel had not agreed to compromise the fees sought here, as there were many novel and difficult questions presented in this case.   These include: whether Plaintiffs could intervene and cause the copy-cat Texas case to be transferred and consolidated with this one; whether BP qualified as a joint employer given the facts of the case and controlling case law; whether Plaintiffs were paid a valid day rate; whether Defendants' alleged policy and practice of docking

Plaintiffs' pay, if proven, would invalidate the day rate for all Plaintiffs or just those Plaintiffs who were docked, or just invalidate the day rate for the Plaintiffs who were docked in the weeks they were docked; and if Plaintiffs were not paid a valid day rate, what were the consequences? *See* Smith Dec., ¶ 21(b).   There was no controlling case law or regulations that gave clear answers to any of these aforementioned issues related to the day rate.   *Id.*   Had the issue been presented to the Court, the Court's decision on the matter would likely have set a precedent with respect to these issues.   *Id.*   In addition, whether Plaintiffs were misclassified as independent contractors and were in fact employees presented numerous complex factual and legal issues. *Id.*   There was also the question as to whether payments made by TRG to Plaintiffs in February 2011 could be credited against overtime compensation the Plaintiffs would be entitled to if they established they were employees.   *Id.*   There was also no case law directly on point on this issue, and had the Court been presented with this issue, its decision would likely have been precedent-setting.   *Id.*   Defendants also alleged that Plaintiffs had been fully compensated for the overtime wages allegedly owed them, and therefore Plaintiffs were not entitled to liquidated damages, thus there was an issue regarding Plaintiffs' entitlement to liquidated damages.   *Id.* There was also the question of whether Plaintiffs were similarly situated enough to survive a decertification motion.   *Id.*   In light of the many novel and difficult questions in this case, only an enhancement of the lodestar would be warranted.

> **c.     The third factor: the skill required to perform the legal services properly.**

This factor also weighs in favor of a multiplier, if one were sought here, given the complexities of the issues in this case, as illustrated in paragraph 3.b. above.   In addition, Plaintiffs' Counsel had to exercise extensive experience and skill to move to intervene and successfully have the collective portion of a copy-cat case transferred and consolidated with the

instant case; obtain conditional certification and Court-authorized notice, particularly during a

pending motion to dismiss; represent, and gather information and documents from 215 clients;

amend pleadings to add additional facts to support joint employer claims and avoid a motion to

dismiss, as well as amend pleadings to add 18 additional counts of retaliation; and develop case

strategy and an Early Neutral Evaluation process, culminating in a highly successful mediation.

*See* Smith Dec, ¶ 21 (c).   Class Counsel, together, has significant experience, skill and

expertise in representing plaintiffs in FLSA collective actions which enabled them to properly

perform the legal services required and ultimately reach a very favorable result for their clients.

*See* Class Counsel declarations, ¶¶ referenced in fn. 8 *supra*.

> **d.      The fourth factor: the preclusion of other employment by the attorney by acceptance of this case.**

This factor would also favor an upward adjustment if one was sought.   Over the course

of the 16 months or so in which lead-counsel Burr & Smith was involved in this case and

representing Plaintiffs, the firm expended 3,648.74 hours (3577.74 hours after the exercise of

billing judgment) on this case alone, which comprises a large percent of the total hours available

to the four-attorney firm that served as lead-counsel in this case.   *See* Smith Dec., ¶ 21(d).

> **e.      The seventh factor: the time limitations imposed by the client or circumstances.**

This factor also would support an enhancement of the lodestar.   The attempt by

plaintiff's counsel and Defendants TRG and Barrett in the copy-cat Texas case to usurp venue of

the instant first-filed collective action here in the Eastern District of Louisiana by stipulating to

conditional certification of the Southern District of Texas-filed collective action and

court-authorized notice (Lisotta Dkt. 22) required Plaintiffs' Counsel to move quickly to

intervene and transfer and oppose conditional certification and court-authorized notice in the

Texas case.   Smith Dec., ¶ 21(f).   In fact, Class Counsel had to quickly research and file an

opposition to the aforementioned stipulation, which was filed with the Texas court on May 2,

2011, just nine days before Class Counsel's motion for conditional certification and

court-authorized notice was scheduled to be heard before this Court (J. Barbier) on May 11,

2011.   *Id.*   The Texas-court's order (Lisotta Dkt. 26) denying the motion for conditional

certification and court authorized notice, and transferring the collective action claims and

consolidating them with those in the instant case was entered just two days before (May 9, 2011)

the conditional certification hearing for this case before this Court.   *Id.*

      In addition, the Early Neutral Evaluation ("ENE") process involved extensive paper

discovery, including drafting and responding to a substantial number of requests for production,

interviewing and obtaining documents from 215 Plaintiffs to respond to Defendants' requests for

production, and reviewing, coding, and analyzing approximately 20,000 documents and

producing over 8,000 documents to Defendants, as well as organizing, reviewing, and

conducting searches of the almost 54,000 documents produced by Defendants.   *Id.*   The Parties

were also required to provide initial disclosures.   *Id.*   All of this discovery exchange and

provision of initial disclosures was required, per the Courts' November 4, 2011 scheduling order,

to be accomplished by December 1, 2011.   *Id.*   Further, per the Court's scheduling order,

Plaintiffs were required to draft and submit to the Parties' chosen evaluator summary

judgment-type pleadings, declarations from Plaintiffs, supporting documents, and a substantial

statement of issues of undisputed facts in support thereof by January 15, 2012, and were required

to respond to Defendants' summary judgment motion by January 30, 2012.   *Id.*   The evaluator

also requested additional briefing after the initial motions and opposition briefs were filed.   *Id.*

Plaintiffs further had to compile extensive damage calculations, prepare damage spreadsheets,

draft a mediation statement with supporting documents and appendices, and prepare for

mediation which was scheduled for February 17, 2012.   *Id.*

**f.      The eighth factor: the amount involved and the results obtained.**

This factor weighs heavily in favor of an upward adjustment, if one were sought here. Class Counsel obtained extraordinary results in this case.  Class Counsel were able to obtain for Plaintiffs full net recovery for their overtime claims, including all back wages and liquidated damages to which they would likely be able to recover at trial, plus an additional amount in excess thereof.  Smith Dec., ¶ 21(g).  Counsel for Plaintiffs were also able to obtain a settlement amount which pays the seventeen alleged Retaliation Plaintiffs *substantial* amounts for their retaliation claims, the damages for which were speculative due to the high turnover rate of employees at Defendant TRG, and the liability for which would have been very difficult to prove.  *Id.*  In addition, the finality of the settlement agreement is advantageous to the Plaintiffs versus litigating this action for years including potential appeals, given the issues at stake in this case for which there exists no controlling case law or regulations directly on point.  *Id.*

As detailed in the Parties' Confidential Stipulation of Settlement and as confirmed in Smith Dec., ¶ 21(g), Plaintiffs will receive net settlement payments that are substantially greater than those received in typical FLSA class actions.   Charlotte S. Alexander, the Deputy Director of the National Institute for Teaching Ethics and Professionalism and a Post Graduate Research Fellow at Harvard Law School, recently published a law review article on an extensive study of FLSA collective actions, entitled "*Would An Opt In Requirement Fix The Class Action Settlement? Evidence From The Fair Labor Standards Act*." 80:2 MISS. L.J. 443 (Winter 2010) ("Alexander Study").   As part of her study (which is highly critical of FLSA litigation), she identified all FLSA cases filed in the Southern District of Florida (which leads the nation in FLSA cases with 28.7% of all such cases filed in the U.S.).[11]   Ms. Alexander found that in the

---

[11]  *See Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1339 (S.D. Fla. 2009) (citing data compiled by the Administrative Office of the U.S. Courts).

25 collective actions in the Southern District of Florida for which she could obtain recovery data, the ratio of plaintiffs' recovery to plaintiffs' losses ranged from a low of 4% to a high of 100% (but in that unique case, the total loss was extremely low - only $2,063).   More importantly, she found the median recovery to loss ratio was 28%.   *Id.*, Figure 9 at pp. 488-89; *see also Worley*, 2012 U.S. Dist. LEXIS 6391 at *73 citing same from Alexander Study.   Given these statistics and findings from the Alexander Study, Class Counsel in this case was able to obtain exceptional, if not unheard of results: a net recovery to loss ratio in excess of 100% for Plaintiffs' overtime claims, and substantial settlement amounts for the 17 individual retaliation Plaintiffs.

Additionally, through the diligent efforts of Class Counsel, this case involved an exceptionally high opt-in rate, with nearly 31% of putative class members electing to join this action (215/699 putative class members).   Smith Dec., ¶ 21(g).   Such a result is in sharp contrast with the often low levels of participation in FLSA collective actions and the 15% opt-in rate which is the average in these cases.   *See* Alexander Study, pp. 466-67 & Figure 10 at pp. 489-91.   In Ms. Alexander's study, she was able to gather data on the opt-in rates in 38 FLSA collective actions.   The plaintiff opt-in rates in these cases ranged from 0% to 48%, with a median of 15% and 30 of the 38 cases with opt-in rates below 20%.   *Id.*   Another analysis of FLSA opt-in rates in federal courts around the country that Ms. Alexander cites calculated the average opt-in rate to be 15.71%.   *Id.*, p. 468 (citing Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in Federal Courts*, 29 BERKELEY J. EMP. & LAB. L. 269, 292 94 (2008)).

As Class Counsel indisputably obtained extraordinary results for Plaintiffs in this case, only an upward adjustment to their lodestar would be appropriate, if one were sought.

### g.      The ninth factor: the experience, reputation and ability of the attorneys

This factor is covered extensively in the declarations of the senior partner attorneys in this case who represented Plaintiffs: Sam Smith, Justin Swartz, Bruce Kingsdorf, and Rex Burch. *See* fn. 8 *supra*.   Senior Class Counsel are highly-experienced in FLSA collective actions and in class actions, have been recognized for their expertise and ability in the area, are sought-after speakers and well-published, are highly-regarded in their areas of practice, and have demonstrated their ability as highly-capable, skilled and competent attorneys throughout their lengthy legal careers.  *Id.*   Associate Class Counsel also have significant experience, demonstrated ability, and established reputations as reflected in the aforementioned declarations, as well as their performance in this case.   *Id.*

### h.      The tenth factor: the "undesirability" of the case.

This factor would also support an enhancement of the lodestar if one were sought.   The legal, factual and procedural difficulties cited above, combined with the problems involved in prosecuting a collective action against five employers, all of whom denied they were Plaintiffs' employers, and even if TRG and Barrett were found to be employers, it was uncertain whether they would have been capable of paying a large judgment, contributed to the undesirability of this case.  *See Worley*, 2012 U.S. Dist. LEXIS 6391 at *74; Smith Dec., ¶ 21(i).   In addition, that their was no law on point applicable to the day rate and February 2011 payment issues presented an increased risk for Class Counsel as to whether any damages were available to Plaintiffs in this case even if it was determined that they were employees and not independent contractors.   Smith Dec., ¶ 21(b).   Further, the problems associated with a class spread across a fairly wide geographic scope, consisting of Plaintiffs with varying job titles and positions, and

the resulting risk of decertification were also factors contributing to the "undesirability" of the

case.   Smith Dec., ¶ 21(i).

                    **i.**        **The eleventh factor, the nature and length of the professional relationship with the client,**

This factor is not relevant to this case.   *See Worley*, 2012 U.S. Dist. LEXIS 6391 at *74;

Smith Dec., ¶ 21(j).

                    **j.**        **The fifth factor: the customary fee, sixth factor: whether the fee is fixed or contingent, and twelfth factor: awards in similar cases**.

The original representative Plaintiffs, and many of the opt-in Plaintiffs, entered into

contingency fee agreements whereby they agreed that if a recovery was obtained, up to 40% of

the total recovery would be allocated as attorneys' fees for Plaintiffs' Counsel, or the attorneys'

fee allocation would be calculated by multiplying the hours worked by Counsel on the case by

the attorneys' hourly rates, whichever was greater.   *See* Smith Dec., ¶ 21(e).   In order to

facilitate resolution of this case, however, and enable Plaintiffs to obtain full net recovery with

respect to their overtime claims, Counsel for Plaintiffs agreed to cap their fees at 33 and 1/3

percent of the total settlement or 23 percent of the total recovery which is substantially less than

the 40% to which Plaintiffs agreed and also less than the amount arrived at by a straight lodestar

calculation without a multiplier.[12]   *Id.*

It should also be noted that, in accepting the case and working on a contingency basis,

Class Counsel assumed one hundred percent of the risk of the litigation with no security that

they could prove that Defendants misclassified Plaintiffs as independent contractors or that the

February 2011 payments did not constitute payment of all overtime wages owed; no guarantee

that the retaliation Plaintiffs could prove liability against TRG and Barrett; no guarantee that

---

[12]   *See* Smith Dec., ¶ 21(k) n. 7.

TRG, Barrett and all three BP entities could be held accountable as joint employers of Plaintiffs; and no assurance that, in the event BP was not found to be a joint employer, that TRG or Barrett would be solvent when the time for payment arrived.   *Id.*   In the midst of this significant risk, Class Counsel dedicated substantial time, labor, and resources to obtain more than full net recovery for Plaintiffs' overtime wage claims.  *Id.*

While it is <u>very</u> rare that plaintiffs in a collective action obtain full net recovery plus additional amounts, it is <u>not</u> unusual for district courts in the Fifth Circuit to award percentages of approximately one third in attorneys' fees.  *See In re Harrah's Entertainment, Inc.,* 1998 U.S. Dist. LEXIS 18774, 1998 WL 832574, *4 (E.D. La. Nov. 25, 1998) (Clement, J.) (noting that it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third); *In re Prudential-Bache Energy Income P'ship Secs. Litig,* 1994 U.S. Dist. LEXIS 47, 1994 WL 150742, * 1-2, 4 (E.D. La. April 13, 1994) (Livaudais, J.) (noting that awards in common fund cases have historically been computed typically in the 25% to 33% range and was intended to approximate what private counsel ordinarily would charge in a contingent fee contract, and listing awards in cases from this district).  *See also Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (noting that the district court had found the customary contingency for labor litigation to be 35-40%).

Further, it should be noted that percentages allocated to fee awards typically decrease as the settlement award increases in size.  *Worley* at *75.   An oft-cited empirical study of attorneys' fees in class action settlements, Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Stud. 27 (2004) ("Eisenberg Study"), reports that a "scaling effect exists, with fees constituting a lower percent of the client's recovery as the client's recovery increases."   Eisenberg Study at 28; *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 862-64 (E.D. La. 2007) (quoting same).   "In other

words, the higher the recovery, the lower the percentage." *Turner*, 472 F. Supp. 2d at 864.

Thus, lower percentage fees awards are typically associated with so called "mega fund" cases

with common funds in excess of $100 million. *Id.* (involving common fund of $195 million).

Although $3.1 million dollars is an extremely good settlement for the 215 Plaintiffs in this case,

it is not the type of mega fund consisting of a hundred million dollars or more which would

warrant such a decreased percentage for fee allocation in response to windfall concerns. Smith

Dec., ¶ 21(k). In fact, there should be no windfall concern here as the percent requested by

Class Counsel is less than Plaintiffs' Counsel's lodestar, which does not take into account the

hours that have been worked and will be worked in this case after April 10, 2012. *Id.*

> B.  **A Percentage Cross-Check Confirms the Reasonableness of the Fees Class Counsel Seeks.**

"Courts have endorsed the practice of using the other method of determining

reasonableness of fees in class actions, percentage of recovery, to double check the fee."

*Worley*, 2012 U.S. Dist. LEXIS 6391 at * 75 citing *Collins v. Sanderson Farms, Inc.*, 568 F.

Supp. 2d 714, 729 (E.D. La. 2008) (Berrigan, J.) A percentage cross-check on the lodestar

further confirms that the 33 1/3% fee falls well within the range of reasonableness, and is in line

with percentages commonly awarded in the Fifth Circuit. *See In re Harrah's Entertainment,*

*Inc.,* 1998 U.S. Dist. LEXIS 18774, 1998 WL 832574, *4 (E.D. La. Nov. 25, 1998) (Clement, J.)

(noting that it is not unusual for district courts in the Fifth Circuit to award percentages of

approximately one third); *In re Prudential-Bache Energy Income P'ship Secs. Litig,* 1994 U.S.

Dist. LEXIS 47, 1994 WL 150742, * 1-2, 4 (E.D. La. April 13, 1994) (Livaudais, J.) (noting that

awards in common fund cases have historically been computed typically in the 25% to 33%

range and were intended to approximate what private counsel ordinarily would charge in a

contingent fee contract, and listing awards in cases from this district); *Vela v. City of Houston*,

276 F.3d 659, 681 (5th Cir. 2001) (noting that the district court had found the customary contingency for labor litigation to be 35-40%).   In fact, historically, attorney fee awards have ranged from between 20-50% of the total common fund created and average around 25-33.3% of the recovery.   Newberg & Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2002).

The thirty-three and one-third percent fee for Class Counsel is not contested by Defendants and is actually substantially lower than the fee allocation which Plaintiffs previously agreed to.   Smith Dec., ¶¶ 18, 21(e).   Moreover, as previously discussed, the 33 and 1/3 percent fee is more than supported by the lodestar which actually exceeds the percentage fee sought. Smith Dec., ¶ 18.   It is also supported by Class Counsel having created a significant common fund, despite a vigorous defense by Defendants led by highly-qualified defense counsel and substantial challenges to venue (as a result of Texas copy-cat case), class certification, and on the merits.   Finally, when the February 2011 overtime payments TRG made to Plaintiffs are considered in the total recovery amount, Class Counsel actually seek only 23% of the total recovery in fees, a percent substantially lower than that which has been held to be reasonable in the Fifth Circuit.   (*See* fn. 1 *supra*).

## II.   DIVISION OF THE FEE AMONG CLASS COUNSEL IS NOT AN ISSUE

Class Counsel have an agreement on how the attorneys' fees are to be divided and have no disputes regarding the interpretation of their agreement.   Smith Dec., ¶ 22.   The Fifth Circuit allows plaintiffs' counsel to agree on the division of fees among themselves.   *Longden v. Sunderman*, 979 F.2d 1095, 1101 (5th Cir. 1992); s*ee also Turner*, 472 F. Supp. 2d at 869-70. As such, Counsel for Plaintiffs do not require the Court to apportion the fees among Plaintiffs' Counsel because Class Counsel have agreed to divide the fees according to their fee-sharing agreement, a procedure the Fifth Circuit has approved.   *Worley* at *60 citing *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008).   The division of fees by

unanimous agreement of counsel is thus not a hindrance to final settlement of this case.

## III.   THE REQUESTED COSTS AND EXPENSES ASSOCIATED WITH THIS LITIGATION WERE NECESSARY AND INCIDENTAL, AND ARE REASONABLE

The costs and expenses associated with this action were incidental and necessary to the prosecution of this lawsuit, and are more than reasonable given the complexity of this case; the time and labor involved in this case; the geographic scope of this case (litigation took place in Texas and Louisiana, mediation was in Georgia, and Plaintiffs lived all over the United States and worked for Defendants in Tennessee, Florida, Louisiana, Mississippi, Alabama, and Texas); the attendance of hearings and mediation; mediator and expert fees; the cost associated with issuing notice to approximately 700 putative plaintiffs; costs associated with communicating with 215 Plaintiffs; research costs; filing fees; and other reasonable costs associated with the diligent prosecution of this case.   Smith Dec., ¶ 23.   Furthermore, the relatively modest amount in costs and expenses which Class Counsel seek represents less than 6% of the total settlement in this case.   *Id.*

## IV.   CONCLUSION

In conclusion, Class Counsel has obtained exceptional results for Plaintiffs in this case, obtaining in excess of their full net recovery for Plaintiffs' overtime claims and substantial amounts for the 17 Retaliation Plaintiffs.   In addition, Class Counsel's lodestar actually exceeds the amount in fees which they request in this case, and the percent in fees which they request (33 1/3% of the total settlement) is completely in line with percentages awarded and deemed reasonable in the Fifth Circuit for similar collective or class action cases.   Further, the costs and expenses associated with this action were necessary and are more than reasonable, representing less than 6% of the total settlement amount.

**WHEREFORE**, Plaintiffs' respectfully request this Court approve the fees and costs requested for Class Counsel in the Parties' confidential Stipulation of Settlement.

Date: April 25, 2012                    Respectfully submitted,


By:     /s/ Sam J. Smith
        BURR & SMITH, LLP

        Sam J. Smith
        ssmith@burrandsmithlaw.com
        Marguerite M. Longoria
        mlongoria@burrandsmithlaw.com
        Christine M. Jalbert
        cjalbert@burrandsmithlaw.com
        (admitted pro hac vice)
        442 W. Kennedy Blvd., Suite 300
        Tampa, Florida 33606
        Telephone: (813) 253-2010
        Facsimile: (813) 254-8391

        BARRIOS, KINGSDORF & CASTEIX, LLP
        Bruce S. Kingsdorf (#7403)
        kingsdorf@bkc-law.com
        Dawn M. Barrios (#2821)
        barrios@bkc-law.com
        Zachary L. Wool (#32778)
        zwool@bkc-law.com
        701 Poydras Street
        New Orleans, LA  70139
        Telephone: (504) 524-3300
        Facsimile: (504) 524-3313

        OUTTEN & GOLDEN LLP
        Justin M. Swartz
        Molly Brooks
        Dana Sussman
        (admitted pro hac vice)
        3 Park Avenue, 29th Floor
        New York, New York 10016
        Telephone: (212) 245-1000
        Facsimile: (212) 977-4005

        **Attorneys for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that I have on this 25th day of April 2012, electronically filed a copy of the foregoing with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the parties of record:

Rodney A. Seydel, Jr.  
Hoffman Seydel, LLC  
One Shell Square, Suite 3770  
701 Poydras St.  
New Orleans, LA 70139

C Larry Carbo , III  
Chamberlain, Hrdlicka, White,  
   Williams & Martin  
1200 Smith St., Suite 1400  
Houston, TX 77002

Douglas E. Hamel  
Lori Christ  
Vinson & Elkins LLP  
1001 Fannin Street, Suite 2300  
Houston, TX 77002-6760

/s/ Sam J. Smith
Attorney

# THE 2010 NLJ BILLING SURVEY

| Firm Name | Principal Office | Number of attorneys | Average of firmwide biling rates | Median of firmwide billing rates | Partner Billing Rate: High | Partner Billing Rate: Low | Average of partners' billing rates | Median of partners' billing rates | Associate Billing Rate: High | Associate Billing Rate: Low | Average of associates' billing rates | Median of associates' billing rates |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Adams & Reese | New Orleans | 265 | $265 | $270 | $550 | $250 | $344 | $340 | $290 | $195 | $229 | $235 |
| Alston Bird | Atlanta | 786 | $515 | $505 | $865 | $450 | $627 | $615 | $590 | $270 | $405 | $405 |
| Archer & Greiner | Haddonfield, NJ | 176 | | | $560 | $305 | | | $340 | $175 | | |
| Arent Fox | Washington | 329 | | | $765 | $400 | | | $475 | $240 | | |
| Armstrong Teasdale | St. Louis | 233 | | | $475 | $300 | | | $325 | $200 | | |
| Baker, Donelson, Bearman, | Memphis, TN | 552 | $312 | $305 | $595 | $255 | $357 | $348 | $320 | $165 | $231 | $230 |
| Barnes & Thornburg | Indianapolis | 494 | $367 | $375 | $613 | $298 | $416 | $415 | $355 | $225 | $261 | $260 |
| Benesch, Friendlander, Coplan & | Cleveland | 161 | $315 | | $575 | $350 | $335 | | $360 | $195 | $245 | |
| Best Best & Krieger | Riverside, CA | 183 | | | $550 | $310 | | | $395 | $225 | | |
| Blank Rome | Philadelphia | 472 | $510 | $495 | $855 | $440 | $615 | $625 | $550 | $250 | $361 | $353 |
| Bond, Schoeneck & King | Syracuse, NY | 199 | $260 | $255 | $475 | $220 | $309 | $330 | $280 | $160 | $208 | $210 |
| Briggs & Morgan | Minneapolis | 190 | $373 | $390 | $600 | $290 | $437 | $440 | $315 | $210 | $240 | $235 |
| Brinks Hofer Gilson & Lione | Chicago | 149 | $435 | $435 | $725 | $345 | $541 | $560 | $420 | $195 | $308 | $285 |
| Broad and Cassel | Orlando, FL | 160 | $307 | $295 | $475 | $260 | $372 | $375 | $350 | $175 | $242 | $248 |
| Brownstein Hyatt Farber Schreck | Denver | 248 | $391 | $380 | $810 | $295 | $463 | $448 | $360 | $200 | $256 | $255 |
| Bryan Cave | St. Louis | 928 | $464 | $450 | $790 | $370 | $553 | $540 | $550 | $185 | $344 | $345 |
| Buchalter Nemer | Los Angeles | 164 | $415 | $415 | $625 | $270 | $490 | $495 | $450 | $195 | $328 | $310 |
| Buchanan Ingersoll & Rooney | Pittsburgh | 423 | | | $900 | $310 | | | $465 | $210 | | |
| Burr & Forman | Birmingham, AL | 256 | $328 | $330 | $500 | $210 | $361 | $365 | $335 | $200 | $250 | $250 |
| Butzel Long | Detroit | 181 | | | $750 | $300 | | | $375 | $200 | | |
| Carlton Fields | Tampa, FL | 275 | $388 | $390 | $775 | $325 | $455 | $455 | $375 | $195 | $268 | $270 |

**Exhibit 1**

**THE 2010 NLJ BILLING SURVEY**

| Firm Name | Principal Office | Number of attorneys | Average of firmwide billing rates | Median of firmwide billing rates | Partner Billing Rate: High | Partner Billing Rate: Low | Average of partners' billing rates | Median of partners' billing rates | Associate Billing Rate: High | Associate Billing Rate: Low | Average of associates' billing rates | Median of associates' billing rates |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chadbourne & Parke | New York | 444 | $456 | $450 | $995 | $390 | $769 | $785 | $625 | $110 | $442 | $455 |
| Cozen O'Connor | Philadelphia | 521 | $422 | $390 | $880 | $310 | $497 | $475 | $585 | $225 | $326 | $320 |
| Curtis, Mallet-Prevost, Colt & | New York | 252 | $489 | $480 | $785 | $675 | $669 | $675 | $575 | $290 | $365 | $350 |
| Davis Wright Tremaine | Seattle | 491 | $355 | $365 | $795 | $320 | $486 | $480 | $435 | $210 | $304 | $305 |
| Dickinson Wright | Detroit | 230 | | | $575 | $355 | | | $275 | $195 | | |
| Dickstein Shapiro | Washington | 336 | $546 | $530 | $950 | $525 | $656 | $650 | $530 | $265 | $426 | $450 |
| Dinsmore & Shohl | Cincinnati | 402 | $302 | $290 | $590 | $220 | $360 | $355 | $300 | $175 | $222 | $218 |
| Dorsey & Whtiney | Minneapolis | 578 | $410 | $395 | $795 | $290 | $515 | $515 | $440 | $180 | $285 | $270 |
| Duane Morris | Philadelphia | 629 | $483 | $483 | $850 | $240 | $550 | $545 | $480 | $135 | $349 | $350 |
| Dykema Gossett | Detroit | 333 | $445 | $450 | $635 | $360 | $495 | $515 | $450 | $225 | $325 | $320 |
| Eckert Seamans Cherin & Mellott | Pittsburgh | 329 | | | $625 | $250 | | | $320 | $150 | | |
| Edwards Angell Palmer & Dodge | Boston | 505 | $451 | $450 | $780 | $345 | $571 | $575 | $610 | $200 | $323 | $303 |
| Epstein Becker & Green | New York | 302 | $429 | $425 | $850 | $350 | $520 | $500 | $450 | $180 | $325 | $320 |
| Fisher & Phillips | Atlanta | 238 | | | $505 | $340 | | | $360 | $220 | | |
| Fitzpatrick, Cella, Harper & Scinto | New York | 175 | | | $730 | $460 | | | $440 | $275 | | $325 |
| Foley & Lardner | Milwaukee | 895 | $554 | $570 | $1,035 | | $654 | $640 | | $255 | $426 | $410 |
| Ford & Harrison | Atlanta | 176 | | | $620 | $375 | | | $390 | $250 | | |
| Fowler White Boggs | Tampa, FL | 127 | $350 | $370 | $575 | $325 | $400 | $388 | $315 | $205 | $250 | $255 |
| Fox Rothschild | Philadelphia | 472 | $407 | $415 | $690 | $315 | $473 | $470 | $475 | $235 | $298 | $290 |
| Frost Brown Todd | Cincinnati | 404 | $279 | $280 | $515 | $200 | $326 | $325 | $250 | $150 | $189 | $190 |
| Gardere Wynne Sevell | Dallas | 270 | $445 | $450 | $815 | $380 | $531 | $525 | $445 | $195 | $311 | $310 |

**Exhibit 1**

**THE 2010 NLJ BILLING SURVEY**

| Firm Name | Principal Office | Number of attorneys | Average of firmwide biling rates | Median of firmwide billing rates | Partner Billing Rate: High | Partner Billing Rate: Low | Average of partners' billing rates | Median of partners' billing rates | Associate Billing Rate: High | Associate Billing Rate: Low | Average of associates' billing rates | Median of associates' billing rates |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gibbons | Newark, NJ | 223 | $404 | $410 | $790 | $390 | $479 | $475 | $450 | $250 | $289 | $275 |
| Godfrey & Kahn | Milwaukee | 172 | | | $495 | $325 | | | $340 | $180 | | |
| GrayRobinson | Orlando, FL | 250 | | | $750 | $225 | | | $315 | $150 | | |
| Greenberg Traurig | New York | 1763 | $453 | $480 | $875 | $355 | $550 | $580 | $610 | $200 | $332 | $350 |
| Harris Beach | Rochester, NY | 176 | | | $500 | $275 | | | $250 | $140 | | |
| Hiscock & Barclay | Syracuse, NY | 175 | $311 | $275 | $650 | $195 | $348 | $305 | $440 | $150 | $234 | $195 |
| Hodgson Russ | Buffalo, NY | 197 | $328 | $320 | $665 | $230 | $374 | $370 | $410 | $175 | $238 | $230 |
| Holland & Knight | Washington | 942 | $418 | $425 | $850 | $300 | $499 | $495 | $480 | $185 | $288 | $280 |
| Holme Roberts & Oven | Denver | 192 | $355 | $345 | $635 | $285 | $415 | $410 | $530 | $170 | $295 | $285 |
| Husch Blackwell | St. Louis | 554 | $329 | $331 | $804 | $230 | $357 | $375 | $415 | $171 | $220 | $205 |
| Jackson Kelly | Charleston, WV | 161 | | | $495 | $245 | | | $275 | $155 | | |
| Jackson Lewis | White Plains, NY | 661 | $364 | $300 | $715 | $260 | $428 | $430 | $440 | $150 | $282 | $275 |
| Jones, Walker, Waechter, | New Orleans | 302 | | | $620 | $195 | | | $275 | $140 | | |
| Kelley Drye & Warren | New York | 325 | | | $900 | $465 | | | $565 | $275 | | |
| Kilpatrick Stockton | Atlanta | 423 | $425 | $425 | $730 | $375 | $527 | $520 | $465 | $225 | $320 | $320 |
| Knobbe, Martens, Olson & Bear | Irvine, CA | 266 | $432 | $415 | $710 | $395 | $511 | $485 | $450 | $285 | $332 | $335 |
| Lane Powell | Seattle | 175 | $349 | $380 | $600 | $310 | $431 | $430 | $350 | $230 | $278 | $275 |
| Lathrop & Gage | Kansas City | 286 | | | $490 | $255 | | | $265 | $180 | | |
| Lewis, Rice & Finersh | St. Louis | 157 | | | $460 | $260 | | | $315 | $150 | | |
| Lindquist & Vennum | Minneapolis | 184 | $330 | $350 | | | $415 | $410 | | | $235 | $230 |
| Littler Mendelson | San Francisco | 764 | $372 | $355 | $650 | $290 | $445 | $435 | $480 | $210 | $296 | $285 |

Exhibit 1

THE 2010 NLJ BILLING SURVEY

| Firm Name | Principal Office | Number of attorneys | Average of firmwide billing rates | Median of firmwide billing rates | Partner Billing Rate: High | Partner Billing Rate: Low | Average of partners' billing rates | Median of partners' billing rates | Associate Billing Rate: High | Associate Billing Rate: Low | Average of associates' billing rates | Median of associates' billing rates |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Locke Lord Bissell & Liddell | Dallas | 642 | $486 | $515 | $1,120 | $400 | $599 | $600 | $525 | $215 | $320 | $300 |
| Loeb & Loeb | New York | 300 | | | $975 | $475 | | | $575 | $275 | | |
| Lovenstein Sandler | Roseland, NJ | 238 | | | $825 | $440 | | | $575 | $235 | | |
| Luce, Forward, Hamilton & Scripps | San Diego | 143 | | | $670 | $350 | | | $445 | $245 | | |
| Manatt, Phelps & Phllips, | Los Angeles | 320 | $568 | $590 | $850 | $525 | $651 | $650 | $525 | $200 | $405 | $410 |
| Marshall, Dennehey, Warner, | Phildelphia | 412 | | | $410 | $145 | | | $320 | $130 | | |
| Maynard, Cooper & Gale | Birmingham, AL | 212 | | | $600 | $325 | | | $295 | $235 | | |
| McAndrews, Held & Malloy | Chicago | 102 | | | $675 | $260 | | | $350 | $225 | | |
| McCarter & English | Newark, NJ | 382 | $355 | $400 | $825 | $360 | $498 | $485 | $405 | $215 | $313 | $315 |
| McElroy, Deutsch, Mulvaney & | Morristown, NJ | 269 | $210 | $225 | $550 | $295 | $280 | $260 | $275 | $150 | $190 | $185 |
| McGuireWoods | Richmond, VA | 872 | $455 | $450 | $830 | $325 | $543 | $535 | $600 | $220 | $355 | $350 |
| McKenna Long & Aldridge | Atlanta | 429 | $455 | $410 | $775 | $375 | $540 | $525 | $490 | $220 | $366 | $355 |
| Michael Best & Friedrich | Milwaukee | 214 | $346 | $345 | $650 | $235 | $400 | $390 | $320 | $190 | $239 | $230 |
| Miles & Strockbridge | Baltimore | 223 | | | $695 | $325 | | | $370 | $220 | | |
| Miller & Martin | Chattanooga, TN | 192 | $328 | $335 | $610 | $235 | $361 | $365 | $275 | $180 | $218 | $210 |
| Montgomery, McCracken, Walker | Philadelphia | 117 | | | $625 | $380 | $461 | | $395 | $205 | $284 | |
| Moore & Van Allen | Charlotte, NC | 282 | $364 | $350 | $785 | $265 | $441 | $425 | $350 | $180 | $257 | $250 |
| Morris, Manning & Martin | Atlanta | 135 | $424 | $415 | $760 | $425 | $492 | $490 | $545 | $225 | $353 | $360 |
| Nelson Mullins Riley & | Columbia, SC | 400 | $347 | $340 | $850 | $245 | $399 | $385 | $335 | $185 | $248 | $240 |
| Nexsen Pruet | Columbia, SC | 178 | | | $525 | $230 | | | $250 | $160 | | |
| Nixon Peabody | New York | 682 | $429 | $430 | $905 | $375 | $613 | $625 | $580 | $195 | $388 | $395 |

Exhibit 1

## THE 2010 NLJ BILLING SURVEY

| Firm Name | Principal Office | Number of attorneys | Average of firmwide biling rates | Median of firmwide billing rates | Partner Billing Rate: High | Partner Billing Rate: Low | Average of partners' billing rates | Median of partners' billing rates | Associate Billing Rate: High | Associate Billing Rate: Low | Average of associates' billing rates | Median of associates' billing rates |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Non-NLJ 250 Firms | | | | | | | | | | | | |
| Ogletree, Deakins, Nash, Smoak | Greenville, SC | 485 | $351 | | $575 | $300 | $389 | | $390 | $195 | $285 | |
| Patton Boggs | Washington | 525 | $482 | $485 | $990 | $355 | $645 | $625 | $550 | $215 | $399 | $400 |
| Pepper Hamilton | Philadelphia | 458 | $326 | | $825 | $420 | $547 | | $465 | $230 | $329 | |
| Perkins Coie | Seattle | 683 | $447 | | $825 | $275 | $534 | $530 | $570 | $200 | $354 | |
| Phelps Dunbar | New Orleans | 281 | $226 | $215 | $385 | $180 | $272 | $265 | $240 | $145 | $183 | $180 |
| Phillips Lytle | Buffalo, NY | 177 | $255 | $260 | $535 | $260 | $352 | $350 | $450 | $150 | $283 | $230 |
| Polsinelli Shughart | Kansas City, MO | 500 | | | $600 | $250 | | | $325 | $185 | | |
| Quarles & Brady | Milwaukee | 419 | $364 | $360 | $660 | $290 | $438 | $435 | $400 | $210 | $260 | $245 |
| Roetzel & Andress | Akron, OH | 215 | $317 | $325 | $525 | $225 | $357 | $350 | $325 | $165 | $243 | $245 |
| Rutan & Tucker | Costa Mesa, CA | 133 | | | $650 | $355 | | | $450 | $225 | | |
| Saul Eving | Philadelphia | 219 | $412 | $425 | $800 | $320 | $491 | $478 | $475 | $225 | $310 | $285 |
| Schulte Roth & Zabel | New York | 433 | | | $895 | $735 | | | $690 | $275 | | |
| Schwabe, Williamson & Wyatt | Portland, OR | 158 | $350 | $340 | $540 | $310 | $415 | $410 | $450 | $200 | $260 | $250 |
| Seyfarth Shaw | Chicago | 704 | $377 | $375 | $770 | $335 | $505 | $503 | $535 | $185 | $325 | $320 |
| Sheppard Mullin | Los Angeles | 464 | | | $820 | $495 | | | $620 | $270 | | |
| Shumaker, Loop & Kendrick | Toledo, OH | 210 | $331 | $350 | $540 | $250 | $366 | $365 | $315 | $185 | $246 | $235 |
| Smith, Gambrell & Russell | Atlanta | 175 | | | $740 | $325 | | | $440 | $195 | | |
| Snell & Wilmer | Phoenix | 396 | $338 | $325 | $795 | $315 | $486 | $475 | $550 | $175 | $282 | $265 |
| Stoel Rives | Portland, OR | 368 | $381 | $395 | $600 | $315 | $441 | $443 | $390 | $190 | $270 | $265 |
| Strasburger & Price | Dallas | 181 | $336 | $351 | $617 | $250 | $372 | $393 | $306 | $194 | $243 | $245 |

Exhibit 1

THE 2010 NLJ BILLING SURVEY

| Firm Name | Principal Office | Number of attorneys | Average of firmwide biling rates | Median of firmwide billing rates | Partner Billing Rate: High | Partner Billing Rate: Low | Average of partners' billing rates | Median of partners' billing rates | Associate Billing Rate: High | Associate Billing Rate: Low | Average of associates' billing rates | Median of associates' billing rates |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sullivan & Worcester | Boston | 156 | $537 | $543 | $830 | $475 | $647 | $623 | $535 | $290 | $383 | $370 |
| Taft, Stettinius & Hollister | Cincinnati | 286 | $315 | $315 | $500 | $220 | $358 | $350 | $365 | $165 | $227 | $225 |
| Thompson & Knight | Dallas | 328 | | | $825 | $410 | | | $440 | $265 | | |
| Thompson Coburn | St. Louis | 326 | | | $610 | $300 | | | $395 | $190 | | |
| Townsend and Townsend and | San Francisco, CA | 177 | $320 | $290 | $750 | $470 | $563 | $550 | $460 | $260 | $345 | $325 |
| Ulmer & Berne | Cleveland | 177 | | | $565 | $260 | | | $375 | $185 | | |
| Vedder Price | Chicago | 255 | $425 | $425 | $720 | $370 | $483 | $470 | $365 | $255 | $326 | $325 |
| Venable | Washington | 494 | $484 | $495 | $950 | $445 | $590 | $585 | $500 | $280 | $353 | $330 |
| Williams Mullen | Richmond | 300 | $368 | $340 | $645 | $315 | $428 | $395 | $370 | $230 | $279 | $280 |
| Winstead | Dallas | 264 | $395 | | $655 | $340 | $462 | | $390 | $215 | $291 | |
| Winston & Stravn | Chicago | 899 | $486 | $490 | $1,075 | $475 | $670 | $660 | $610 | $250 | $393 | $375 |
| Womble Carlyle Sandridge & Rice | Winston Salem, NC | 503 | $372 | $375 | $625 | $300 | $461 | $465 | $445 | $210 | $291 | $285 |
| Wyatt, Tarrant & Combs | Louisville, KY | 186 | | | $500 | $245 | | | $285 | $180 | | |

Exhibit 1